IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

SOUTHERN APPALACHIAN MOUNTAIN
STEWARDS, APPALACHIAN VOICES,
and SIERRA CLUB,

        Plaintiffs,

v.                                    CIVIL ACTION NO. 2:23-CV-00002

A&G COAL CORPORATION,

        Defendant.

## CONSENT DECREE

### I.    RECITALS

1. On January 18, 2023, concurrent with the filing of this Consent Decree, Plaintiffs Southern Appalachian Mountain Stewards (SAMS), Appalachian Voices and Sierra Club (collectively "Plaintiffs") filed their complaint against A&G Coal Corporation ("Defendant").

2. The Complaint alleges that A&G's failure to conduct timely reclamation at three of its surface coal mining operations—Looney Ridge Surface Mine #1 (1101905), Sawmill Hollow #3 Mine (1101914), and Canepatch Surface Mine (1101918)—violates certain federal and state regulations issued pursuant to Title V of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. § 1251-1279, the Virginia Coal Surface Mining Control and Reclamation Act ("VCSMCRA"), and the terms and conditions of Virginia Coal Surface Mining Operation Permits 1101905, 1101914, and 1101918.

3. In paragraphs 30, 41, and 51 of their Complaint, Plaintiffs report figures provided by the Virginia Department of Energy ("VDOE") indicating acreage disturbed, regraded, and reclaimed/ revegetated at the three mines sites. Without denying that those are the figures reported

1

by the agency, Defendant wishes to provide information from its own records reflecting recent work performed at the sites. Defendant reports that at the Looney Ridge Surface Mine #1 (1101905) it has regraded an additional 175.5 acres and reclaimed/ revegetated an additional 100 acres since April 2013, leaving approximately 140 acres to regrade and 220 acres to reclaim/ revegetate; at the Canepatch Surface Mine (1101918) it has regraded an additional 60 acres since October 2015, leaving approximately 296 acres to regrade and 606 acres to reclaim/ revegetate; and at the Sawmill Hollow #3 Mine (1101914) it has regraded an additional 162 acres since October 2015, leaving approximately 875 acres to regrade and 1,623 acres to reclaim/ revegetate. Plaintiffs currently lack the knowledge to confirm or deny these figures.

4. On May 10, 2022, Plaintiffs gave notice of the violations and their intent to file suit to the Defendant, the Office of Surface Mining Reclamation and Enforcement ("OSMRE"), and the VDOE, as required by Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A) and 30 C.F.R. § 700.13(a).

5. The Parties recognize, and the Court by entering this Consent Decree finds, that the Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation among the Parties, and that this Decree is fair, reasonable and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over the Parties and over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 30 U.S.C. § 1270 (the SMCRA citizen suit provision).

7.     Venue in this District is proper pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

8.     For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to this Court's jurisdiction over this Consent Decree and consents to venue in this District.

### III.     APPLICABILITY

9.     The provisions of this Consent Decree apply to and are binding upon Plaintiffs and Defendant and those with authority to act on their behalf, including, but not limited to, their officers, directors and staff, and their respective successors and/or assigns; and upon other persons or entities otherwise bound by law.

10.    No transfer of ownership of any of the subject Mine Sites shall relieve Defendant of its obligations to ensure that the terms of this Consent Decree are implemented, provided that prior to any transfer, the Defendant shall provide a copy of this Consent Decree to the proposed transferee and require the transferee to provide written confirmation to the Court acknowledging the terms of the Consent Decree and that the transferee will be bound by those terms. In such event, Defendant shall no longer be subject to this Consent Decree. All transferees, subsequent owners, and operators of the Defendant shall be bound by the terms of this Consent Decree consistent with applicable law, whether or not they acknowledge the terms of this Consent Degree.

### IV.     DEFINITIONS

11.    Wherever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

   a.   "Canepatch Surface Mine," sometimes referred to as "Job 21" or "A&G #21," shall mean that mine subject to CSMO/NPDES permit 1101918;

b. "Complaint" shall mean Plaintiffs' Complaint for Declaratory and Injunctive Relief and for Civil Penalties filed on January 18, 2023;

c. "Completion of Reclamation" shall mean approval by the Virginia Department of Energy of an application for Phase II bond release, as defined at 4 VAC 25-130-800.40;

d. "Consent Decree" or "Decree" shall mean this Consent Decree;

e. "Effective Date" means the date on which this Consent Decree is entered by the Court;

f. "Good operating condition" shall mean that the piece of equipment is fully capable of carrying out all typical uses common for that type of equipment;

g. "Looney Ridge Surface Mine #1" shall mean that mine subject to CSMO/NPDES permit 1101905;

h. "Mine Sites" shall mean, collectively, the Looney Ridge Surface Mine #1, Canepatch Surface Mine, and Sawmill Hollow #3 Mine;

i. "Parties" shall mean Plaintiffs and Defendant collectively;

j. "Sawmill Hollow #3 Mine," sometimes referred to as "Job 2" or "A&G #2," shall mean that mine subject to CSMO/NPDES permit 1101914.

## V.   INJUNCTIVE RELIEF

12. Defendant agrees to conduct reclamation activities at each of the Mine Sites according to the terms and schedule specified in this section V.

13. Defendant agrees to deploy reclamation equipment according to the following schedule:

      i. At the Looney Ridge Surface Mine #1, no later than November 15, 2022, Defendant will have on site and in good operating condition at least: 1 Caterpillar D10 tractor; 1 Caterpillar D11 tractor; 1 blasthole drill; 1 Caterpillar 992 loader; and 1 Caterpillar 777D rock truck.

      ii. At the Canepatch Surface Mine, no later than December 15, 2022, Defendant will have on site and in good operating condition at least: 1 bulldozer (either a Caterpillar D9, D10, or D11 model); 1 Caterpillar 992 loader; and 2 Caterpillar 777D rock trucks.

      iii. At the Sawmill Hollow #3 Mine, no later than January 1, 2024, Defendant will have on site and in good operating condition at least: 1 bulldozer (either a Caterpillar D9, D10, or D11 model); 1 Caterpillar 992 loader; and 1 Caterpillar 777D rock truck.

14. Defendant agrees to maintain all reclamation equipment (dozers, excavators, trucks, drill, etc.) on site and in good operating condition until the Completion of Reclamation at each Mine Site. Provided, however, that Defendant may move equipment to a different Mine Site for the purposes of reclamation prior to the Completion of Reclamation at the original site, but only with written approval from the Plaintiffs. Any equipment that is not in good operating condition must be repaired within 15 days or replaced with equivalent equipment within 30 days.

15. Defendant agrees to maintain a sufficient number of workers on site at each Mine Site to operate the equipment listed in paragraph 13 in a manner that will allow Defendant to meet the deadlines listed in paragraph 16.

16. Defendant agrees to achieve Completion of Reclamation at the three mine sites according to the following schedule:

      i. At the Looney Ridge Surface Mine #1, by no later than August 31, 2023;

      ii. At the Canepatch Surface Mine, by no later than February 29, 2024;

      iii. At the Sawmill Hollow #3 Mine, by no later than December 31, 2025.

17. Defendant agrees to diligently pursue any permit modifications and permissions needed to undertake reclamation activities as provided in this section V, as well as any applications for bond release. If Plaintiffs believe Defendant is failing to diligently pursue such modifications, permissions or applications, Plaintiffs shall—prior to seeking relief from the Court—provide Defendant written notice of, and a thirty-day opportunity to cure, any alleged breach of Defendant's agreement to diligently pursue such modifications, permissions or bond releases.

18. Defendant agrees to establish, and to provide and maintain funding for, the Escrow Account as described in section IX below.

## VI.   STIPULATED PENALTIES

19. Defendant shall pay stipulated penalties for noncompliance with the requirements set forth in section V above, as follows:

      i. Failure to place on site all specified items of reclamation equipment in good operating condition as described in paragraph 13 above by the deadline stated in the paragraph shall incur a stipulated penalty of $37,500. (For clarity, placement of less than all specified equipment prior to the deadline will incur the penalty.) An additional stipulated penalty of $37,500 shall be incurred on the last day of the month for every subsequent month in which Defendant fails to have all of the specified items of reclamation equipment on site and/or in good working condition for any portion of that month that

        exceeds the time permitted to repair or replace said equipment set forth in Paragraph 14 above and subject to the provisions of Section XII below.

    ii. Failure to maintain all specified items of reclamation equipment on site and in good operating condition as provided in paragraph 14 above shall incur a stipulated penalty of $37,500 per month for every calendar month in which: (1) there is at least one 24-hour period within which any piece of equipment is off-site for a purpose other than repairs; and/or (2) equipment remains inoperable due to a condition of disrepair for longer than a 30-day period subject to the provisions of Section XII below.

    iii. Failure to achieve Completion of Reclamation at any of the three Mine Sites by the date provided for each site in paragraph 16 above shall incur a penalty of $75,000 per site. An additional stipulated penalty of $37,500 per site shall be incurred on the last day of the month for every subsequent month following the date provided for each site in paragraph 16 above in which Defendant fails to achieve Completion of Reclamation.

20. Plaintiffs may waive stipulated penalties at their sole discretion.

21. Defendant shall pay stipulated penalties owed under the terms of this section to Upper Tennessee River Roundtable. Defendant shall make the required stipulated penalty payments within 30-days of the date on which the obligation to pay the stipulated penalty arises. Should Defendant be subject to a penalty or fine from the Virginia Department of Energy for the same action giving rise to the obligation to pay a stipulated penalty under this Consent Decree, then the stipulated penalty amount owed by Defendant under this Consent Decree shall be reduced by an amount equal to the amount Defendant actually paid to the Virginia Department of Energy.

In order to claim this reduction, Defendant must produce a receipt from the Virginia Department of Energy showing the amount actually paid.

## VII.     STATUS REPORTS AND SITE VISITS

22.     Defendant shall submit an initial status report to Plaintiffs regarding the status of reclamation at each of the mines within two (2) months of the Effective Date and shall then submit subsequent status reports to Plaintiffs every two (2) months thereafter until all of the Mine Sites have achieved Completion of Reclamation. Each status report shall identify every piece of equipment located at each Mine Site during the preceding two-month period and, for each piece of equipment, shall indicate any dates on which the equipment was not in good operating condition and any dates on which the equipment was not present on the Mine Site.

23.     Defendant agrees to allow access to each of the three mine sites by Plaintiffs' representatives, accompanying Virginia Department of Energy personnel, at a frequency sufficient to allow Plaintiffs to assess the progression of reclamation work and Defendant's compliance with the terms of this Consent Decree. It is agreed that there may be only one representative per Plaintiff organization allowed on any visit. It is agreed the any Plaintiff representative visiting the site will meet any safety requirements of State, Federal, and Local laws and regulations, including hazard training. At a minimum, each Plaintiff representative will provide their own hard hat, hard toe shoes, safety glasses and reflective wear.

24.     Defendant agrees to provide Plaintiffs with a copy of each AML fee report (OSM-1 form) that it files for each Mine Site, within 14-days of such filing, so long as the Consent Decree remains in effect.

25.     Defendant shall provide all reports and other communications required under this Consent Decree in electronic format wherever possible, and shall provide copies to the following:

8

>Peter Morgan
>Senior Attorney
>Sierra Club
>1536 Wynkoop St., Ste. 200
>Denver, CO 80202
>303-454-3367
>peter.morgan@sierraclub.org
>
>Isak Howell
>4227 Colonial Ave.
>Roanoke, VA 24018
>540-998-7744
>isak@howell-lawoffice.com
>
>Walton Morris
>Morris Law Office, P.C.
>1901 Pheasant Lane
>Charlottesville, VA  22901
>434-293-6616
>wmorris@fastmail.net

### VIII.   PROHIBITION ON COAL REMOVAL ABSENT COMPLIANCE

26.     Defendant agrees that it is prohibited from coal removal at each Mine Site until it has achieved, documented, and reported to the Plaintiffs its compliance with all applicable deadlines provided in section V Paragraph 13 at that Mine Site. If, at any time subsequent to Defendant's documented achievement of compliance with the requirements of Paragraph 13, Defendant falls out of compliance with the terms of this Consent Decree, as defined by failure to comply with any requirement of any paragraph of section V (entitled "Injunctive Relief"), Defendant is prohibited from coal removal at all of the Mine Sites until such time as Defendant brings itself back into full compliance with the terms of this Consent Decree.

27.     Defendant may invoke the Force Majeure provisions of section XII in order to seek temporary relief from imposition of the prohibition on coal removal, and Plaintiffs shall not unreasonably withhold their agreement that the prohibition on coal removal should not be imposed. In this regard, it is specifically understood that the time limit set forth in Paragraph 14

above concerning the replacement of equipment not in working order within 30 days shall not be strictly utilized to trigger this prohibition if the repair of the equipment can be accomplished in a reasonable time.

28. Nothing in this Consent Decree relieves Defendant of any obligation arising under SMCRA or under any other applicable law or regulation governing coal removal.

### IX. CREATION OF ESCROW ACCOUNT

29. Defendant will establish a dedicated Escrow Account to hold funds dedicated to the purpose of reclaiming the Mine Sites. The obligation to create, fund, and maintain the Escrow Account constitutes a judgment of the U.S. District Court for the Western District of Virginia.

30. Each month, Defendant will deposit the lower of $100,000 or 33% of all revenue generated from the sale of coal mined at the three Mine Sites that month—as listed on Defendant's tax-on-tonnage AML fee reports (OSM-1 forms)—into the Escrow Account. The obligation to fund the Escrow Account shall cease when the funds in the Escrow Account total $600,000. Should Defendant withdraw any funds in the Escrow Account, then the obligation to fund the Escrow Account shall resume until the funds in the Escrow Account again total no less than $600,000.

31. Defendant may only expend funds from the Escrow Account for the purpose of carrying out reclamation activities at any of the three Mine Sites, and only if Defendant lacks funds in its operating accounts to pay for such reclamation.

32. Should Defendant access any funds in the Escrow Account for any purpose not permitted by paragraph 31, then from that date forward Defendant is prohibited from removing any coal from any of the Mine Sites.

33. Should Defendant access any funds in the Escrow Account, Defendant must provide Plaintiffs with a detailed accounting of how those funds were expended, within 30-days of such expenditure.

34. If any funds remain in the Escrow Account on the date this Consent Decree terminates, then after full satisfaction of Plantiffs' attorneys' fees and costs, any remaining funds will be transferred to any of Defendant's general accounts and may be used for whatever purpose Defendant may choose.

## X. COSTS AND FEES

35. Defendant agrees to pay Plaintiffs $50,000 in full consideration and settlement of any claim of Plaintiffs for attorneys' fees, expert witness fees, costs and expenses incurred up to the Effective Date of the Consent Decree. One-half ($25,000) of this amount shall be paid within 14 days of the Effective Date of this Consent Decree. The remainder ($25,000) shall be paid within 45 days of the Effective Date of this Consent Decree.

36. Defendant agrees to pay Plaintiffs reasonable attorneys' fees, expert witness fees, costs and expenses reasonably incurred by Plaintiffs after the Effective Date in successfully enforcing any of the terms of this Consent Decree, including but not limited to assessment or collection of Stipulated Penalties. Plaintiffs' attorneys shall be reimbursed reasonable attorneys' fees computed at no less than the following hourly rates: $400 per hour for Walton Morris and $375 per hour for Peter Morgan and Isak Howell.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

37. This Consent Decree resolves all of Plaintiffs' claims for relief under § 1270 of SMCRA alleged in the Complaint.

38. This Consent Decree shall not limit the right of Defendant to pursue regulatory changes or modifications of the CSMO permits for the Mines, including applications for bond release, nor shall it limit Plaintiffs' right to challenge any requested regulatory changes, modifications, or applications except as expressly stated herein. Should any Plaintiff exercise its right to challenge any requested regulatory change, modification, or application, the Parties agree to jointly move for a stay of, or temporary relief from, (a) agency action approving the regulatory change, modification, or application, and (b) any reviewable judgment upholding any such regulatory change, modification, or application on judicial review, pending entry of a final, unappealable judgment in the matter.

39. Nothing in this Consent Decree shall impose any obligations upon Defendant except as expressly stated herein, or as the Parties may hereafter agree in writing.

40. Nothing in this Consent Decree shall prevent Plaintiffs from pursuing administrative or other legal action or citizen suits against Defendant for matters not subject to this Consent Decree and Complaint.

41. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any person or entity not a party to this Consent Decree.

### XII.   FORCE MAJEURE

42. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the reasonable control of Defendant, or any entity controlled by Defendant or of Defendant's contractors, which delays or prevents the performance of any obligation under this Consent Decree despite Defendant's and those other entities' commercially reasonable efforts to fulfill the obligation. By way of example, this provision would apply to the inability to obtain needed parts or specialized labor to restore a piece of required equipment in

good working order, provided Defendant has exercised commercially reasonable efforts to obtain the needed parts or specialized labor, and further provided Defendant does not have available a comparable piece of equipment on a different site in Virginia that can be relocated to replace the non-functioning equipment. The requirement that Defendant exercise commercially reasonable efforts to fulfill its obligations includes using diligent, commercially reasonable efforts to anticipate any potential Force Majeure event and diligent, commercially reasonable efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the extent possible.

43. "Force Majeure" does not include a change in the price of coal, nor does it include Defendant's or any other entity's financial inability to perform any obligation under this Consent Decree or any event expressly addressed within this Consent Decree.

44. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice by electronic mail transmission to Plaintiffs within five (5) business days of when Defendant first knew that the event might cause a delay. Within 14 days thereafter, Defendant shall provide, in writing, to Plaintiffs an explanation for the reasons for the delay; the anticipated duration of the delay; and actions taken or to be taken to prevent or minimize the delay.

45. If Plaintiffs agree that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by Plaintiffs for such time as is necessary to complete those obligations. Plaintiffs shall not unreasonably withhold their agreement that a delay or anticipated delay is attributable to a Force Majeure event. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the

time for performance of any other obligation. Plaintiffs will notify Defendant in writing within five business days of the length of the agreed extension, if any, for performance of the obligations affected by the Force Majeure event.

46. If Plaintiffs do not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, Plaintiffs will notify Defendant, in writing, of such decision within five (5) business days of its receipt of the Force Majeure claim by Defendant. Any dispute between the Parties over a Force Majeure claim may be resolved by the Court.

### XIII.   EFFECTIVE DATE

47. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

### XIV.   RETENTION OF JURISDICTION

48. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to section XV ("Modification") or effectuating or enforcing compliance with the terms of this Consent Decree.

49. Plaintiffs and Defendant reserve all legal and equitable rights and defenses available to them to enforce or defend the provisions of this Consent Decree, subject to the provisions herein.

### XV.   MODIFICATION

50. The terms of this Consent Decree may be only be modified by a subsequent written agreement signed by all Parties or upon motion properly presented to and approved by the Court. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

## XVI.   SIGNATORIES/SERVICE

51.   Each undersigned representative of Plaintiffs and Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

52.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XVII.   INTEGRATION

53.   This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XVIII.   TERMINATION OF CONSENT DECREE

54.   This Consent Decree shall terminate once the Virginia Department of Energy has granted Phase III bond release, as defined at 4 VAC 25-130-800.40, at each of the three Mine Sites.

## XIX.   FINAL JUDGMENT

55.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to Plaintiffs and Defendant.  The Court finds that there is no just reason for delay and, therefore, enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

ENTERED, _____ 2023

_____
Judge James P. Jones

UNITED STATES DISTRICT COURT JUDGE

For the Plaintiffs Southern Appalachian Mountain Stewards, Appalachian Voices, and Sierra Club:

Dated: January 19, 2023

*/s/ Isak Howell*
Isak Howell (Virginia Bar Number 75011)
Appalachian Mountain Advocates
119 Norfolk Ave. SW #330
Roanoke, VA 24011
isak@howell-lawoffice.com
(540) 998-7744

For the Defendant A&G Coal Corporation:

Dated: January 19, 2023

Aaron B. Houchens (VSB No. 80489)
AARON B. HOUCHENS, P.C.
111 E. Main Street
P.O. Box 1250
Salem, Virginia 24153
aaron@houchenslaw.com
540-389-4498

Michael W. Carey (WV Bar No. 635)
Carey Douglas Kessler & Ruby PLLC
707 Virginia Street East
901 Chase Tower
Charleston, West Virginia 25301
mwcarey@csdlawfirm.com
(304) 345-1234